**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RICHARD COMSTOCK, JOSEPH WHITE,
LEGISLATOR KEVIN MCCAFFREY, SENATOR
GEORGE BORRELLO, SENATOR THOMAS O'MARA,
SENATOR MARIO MATTERA, SENATOR BILL
WEBER, ASSEMBLYWOMAN JODI GIGLIO,
ASSEMBLYMAN ANDREW GOODELL,
ASSEMBLYMAN STEVE HAWLEY, ASSEMBLYMAN
BRIAN MANKTELOW, ASSEMBLYMAN MATT
SLATER, AND ASSEMBLYMAN ROBERT SMULLEN,
in their individual and official capacities,

3:23-cv-907 (BKS/ML)

         Plaintiffs,

v.

NEW YORK STATE, LETITIA JAMES, in her official
capacity as New York State Attorney General, NEW
YORK STATE SENATE, ANDREA STEWART-
COUSINS, in her official capacity as New York State
Senate Majority Leader, ROBERT ORTT, in his official
capacity as New York State Senate Minority Leader, NEW
YORK STATE ASSEMBLY, CARL HEASTIE, in his
official capacity as Speaker of the New York State
Assembly, CRYSTAL PEOPLES-STOKES, in her official
capacity as New York State Assembly Majority Leader,
and WILLIAM BARCLAY, in his official capacity as New
York State Assembly Minority Leader,

         Defendants.

---

**Appearances:**

*For Plaintiffs:*
Dennis C. Vacco
Scott S. Allen, Jr.
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

*For Defendants New York State, Letitia James, the New York State Senate, Andrea Stewart-Cousins, the New York State Assembly, Carl Heastie, and Crystal Peoples-Stokes:*
Letitia James

Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 S. State St.
Syracuse, NY 13202

*For Defendants Robert Ortt and William Barclay:*
William B. Hunt
Stephen T. Helmer
Mackenzie Hughes LLP
440 S. Warren St., Suite 400
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On July 26, 2023, Plaintiffs, consisting of constituents of New York State and current or aspiring New York State legislators, brought this action against the following individuals and entities: New York State; the New York State Senate; the New York State Assembly; Letitia James, in her official capacity as New York State Attorney General; and the following individuals in their official capacities as state legislators: Andrea Stewart-Cousins, Robert Ortt, Carl Heastie, Crystal Peoples-Stokes, and William Barclay. (Dkt. No. 1; *see also* Dkt. No. 18). Plaintiffs allege that the addition of Section 5–b to the New York Legislative Law, establishing restrictions on legislators' outside income, violates provisions of the United States and New York State Constitutions and seek a declaratory judgment invalidating the law. (Dkt. No. 18).

Specifically, Plaintiffs allege that Section 5–b: (1) discriminates against legislators on the basis of their outside income in violation of the Equal Protection Clauses of the United States and New York State Constitutions; (2) unconstitutionally adds an additional qualification to be a member of the New York State Legislature in violation of Article III, Section 7 of the New York State Constitution; (3) is unconstitutionally vague and deprives legislators of their property

2

without due process of law in violation of the Due Process Clauses of the United States and New York State Constitutions; (4) disenfranchises voters in violation of Article I, Section 1 of the New York State Constitution; (5) deprives legislators of their salaries in violation of Article III, Section 6 of the New York State Constitution; (6) deprives legislators of their rights to vote on legislation and to participate in the legislative process in violation of the First and Fourteenth Amendments to the United States Constitution; (7) deprives legislators' constituents of their right to vote in violation of the First and Fourteenth Amendments to the United States Constitution; (8) effectively expels legislators from the New York State Legislature without due process in violation of the Due Process Clauses of the United States and New York State Constitutions. (*Id.*).

Defendants, excepting Ortt and Barclay, have filed a motion to dismiss. (Dkt. No. 23).[1] This motion is fully briefed. (Dkt. Nos. 23-4, 25, 26). After briefing was submitted on the motion to dismiss, Plaintiffs filed a motion to amend their complaint, accompanied by a proposed second amended complaint (the "PSAC")[2] and supporting memorandum of law. (Dkt. Nos. 27, 27-2, 27-3). Defendants have filed a response opposing the motion to amend, or alternatively, requesting that it be decided along with the motion to dismiss. (Dkt. No. 28). For the following reasons, the Court grants Defendants' motion to dismiss and denies Plaintiffs' motion to amend.

## II.     MOTION TO AMEND THE COMPLAINT

Plaintiffs have filed a motion to amend their complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 27). The PSAC adds as defendants the New York

---

[1] Defendants William Barclay and Robert Ortt have filed an answer, (Dkt. No. 24), and do not join in either the motion to dismiss or the opposition to the motion to amend, (*see* Dkt. No. 23-4, at 18 n.2; Dkt. No. 28, at 4 n.1). From here on, the Court uses the term "Defendants" to refer to the moving defendants.

[2] Plaintiffs previously amended their complaint once before, prior to the filing of the motion to dismiss. (*See* Dkt. No. 18).

3

State Commission on Ethics and Lobbying in Government ("COELIG") and eleven members of COELIG. (Dkt. No. 27-2, at 1–2).[3] Plaintiffs also seek to eliminate their current eighth cause of action and replace it with a claim for damages pursuant to 42 U.S. § 1983, among other changes. (*Id.* at 22–23). Defendants argue that the motion to amend should be denied based on undue delay or futility. (Dkt. No. 28, at 4, 6–8). In the alternative, they request that the Court decide the motion to amend along with the motion to dismiss. (*Id.* at 9).

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "District courts in this Circuit have repeatedly explained that, when faced with an amended complaint, they may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (citing *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)).

Because the moving Defendants have had an opportunity to respond to the PSAC, the Court will consider their motion to dismiss with respect to the PSAC. If the claims in the PSAC cannot survive Defendants' motion to dismiss, then Plaintiffs' cross-motion to amend will be denied as futile. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 460–61 (S.D.N.Y. 2011) ("An amendment is considered futile when the proposed new claim would not withstand a motion to

---

[3] After the motion to dismiss and motion to amend had been fully briefed, the Supreme Court of New York, Appellate Division, Third Department, upheld the Albany County Supreme Court's decision invalidating the section of the New York Executive Law that granted COELIG the authority to receive referrals and complaints regarding violations of the outside income restrictions. *See Cuomo v. N.Y. State Comm'n on Ethics and Lobbying in Gov't*, No. 23-cv-1778, --- N.Y.S.3d ----, 2024 WL 2064132, 2024 N.Y. App. Div. LEXIS 2590 (App. Div. May 9, 2024) (finding Section 94(10) of the Executive Law to be unconstitutional); *see also* Act of Dec. 31, 2022, 2022 N.Y. Sess. Laws, ch. 841, § 5 (McKinney). Plaintiffs have submitted a letter asking the Court to take notice of the decision, (Dkt. No. 29), and Defendants have responded that a previously-granted partial stay of the decision remains in effect. (Dkt. No. 30). The Court does not address the issue further, other than to note that its decision to dismiss Plaintiffs' claims rests on unrelated grounds.

4

dismiss, either for failure to state a cause of action, or on another ground." (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001))).

## III.  BACKGROUND

### A.  Challenged Law

Senate Bill ("S.B.") 9617, signed into law on December 31, 2022, raised New York State legislators' salaries and imposed outside income limits on legislators. Act of Dec. 31, 2022, 2022 N.Y. Sess. Laws, ch. 841, §§ 1–2 (McKinney) (codified at N.Y. Legis. L. § 5–b). The outside income limits on legislators become effective January 1, 2025, and are as follows:

> [A] member of the legislature receiving a salary for legislative work from the state of New York shall be permitted to earn outside income each year for performing fee for service activities and compensated outside activities approved under the permanent joint rules of the Senate and Assembly in an amount totaling no greater than the earning limitations for retired persons in positions of public service allowed for the same year under subdivision two of section two hundred twelve of the retirement and social security law.

N.Y. Legis. L. § 5–b. This amount is currently equal to $35,000. *See* N.Y. Retire. & Soc. Sec. L. § 212(2).

Section 5–b(2)(a) defines "outside earned income" to "mean wages, salaries, fees, and other forms of compensation for services actually rendered." The following are specifically excluded from the definition of "outside earned income":

> (1) salary, benefits and allowances paid by the state;
> (2) income and allowances attributable to service in the reserves of the armed forces of the United States, national guard or other active military service;
> (3) copyright royalties, fees, and their functional equivalent, from the use of copyrights, patents and similar forms of intellectual property rights, when received from established users or purchasers of such rights;
> (4) income from retirement plans of the state of New York or the city of New York, private pension plans or deferred compensation plans (e.g., 401, 403(b), 457, etc.) established in accordance with the internal revenue code;

> (5) income from investments and capital gains, where the member's services are not a material factor in the production of income;
> (6) income from a trade or business in which a member of their family holds a controlling interest, where the member's services are not a material factor in the production of income; and
> (7) compensation from services actually rendered prior to January [1, 2025], or prior to being sworn in as a member of the legislature.

*Id.* § 5–b(2)(b).

A legislator who does not comply with the outside income restrictions is prohibited from receiving a salary for his or her legislative position and from voting as a member of the New York legislature. *Id.* § 5–b(1). Additionally, "[a] member of the legislature who knowingly and intentionally violates" these provisions "shall be subject to a civil penalty in an amount not to exceed [$40,000] and the value of any gift, compensation or benefit received in connection with such violation." *Id.* § 5–b(3). The civil penalty assessment "shall be made by the legislative ethics commission." *Id.*

S.B. 9617 also amended N.Y. Legis. L. § 80(7)(i), granting the legislative ethics commission the power to render formal advisory opinions on what Section 5–b requires upon written request from an individual subject to its jurisdiction. Act of Dec. 31, 2022, 2022 N.Y. Sess. Laws, ch. 841, § 4 (McKinney). Such advisory opinions "until and unless amended or revoked[] shall be binding on the legislative ethics commission in any subsequent proceeding concerning the person who requested the opinion and who acted in good faith, unless material facts were omitted or misstated by the person in the request for an opinion." N.Y. Legis. L. § 80(7)(i).

B.   Facts[4]

The following persons are Plaintiffs in this action: Richard Comstock and Joseph White, taxpayers and voters in New York State; Kevin McCaffrey, a current legislator in Suffolk County who "aspires to be a member of the New York State Assembly"; George Borello, Thomas O'Mara, Mario Mattera, and Bill Weber, members of the New York State Senate; and Jodi Giglio, Andrew W. Goodell, Steve Hawley, Brian Manktelow, Matt Slater, and Robert Smullen, members of the New York State Assembly. (Dkt. No. 27–2, ¶¶ 7–19).

Plaintiffs who are current or aspiring legislators, (collectively, the "Legislator Plaintiffs"), all, except for Plaintiff Slater,[5] allege earning income from sources outside their legislative jobs that is (or could be[6]) "greater than the earning limitations [under the challenged law]." (*Id.* ¶¶ 9–17, 19). The Legislator Plaintiffs allege that they "intend to run for office in 2024," but "due to the outside income restrictions, they will be forced to choose between resigning from the New York State Legislature (or never running for office at all) and terminating outside employment that yields income" above what the restrictions allow. (*Id.* ¶ 20; *see also id.* ¶ 9 ("Plaintiff McCaffrey would run for a New York State Assembly seat but for provisions of Legislative Law § 5–b(1) that restrict a Legislator's ability to earn outside income.")).

---

[4] The facts are drawn from Plaintiffs' PSAC. (Dkt. No. 27-2). Defendants have made a motion to dismiss subject to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 23). As the motion is resolved on the lack of subject matter jurisdiction, *see infra*, only the Rule 12(b)(1) standard is relevant here. Accordingly, the Court assumes the truth of Plaintiffs' "uncontroverted facts," and, as the parties asserting jurisdiction, "draw[s] all reasonable inferences in" their favor. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

[5] The PSAC contains no allegations regarding Plaintiff Slater's income. (*See* Dkt. No. 27-2, ¶ 18).

[6] Plaintiff Manktelow states that he "holds private mortgages on neighboring farmland and by way of principal and interest, earns yearly outside income that fluctuates based upon market conditions, but, upon information and belief, could be 'greater than the earning limitations for retired persons in positions of public service allowed for the same year under subdivision two of section two hundred twelve of the retirement and social security law.'" (Dkt. No. 27-2, ¶ 17).

Plaintiffs Richard Comstock and Joseph White (collectively, the "Constituent Plaintiffs"), reside in the Senate districts of Plaintiffs O'Mara and White, respectively. (*Id.* ¶¶ 7–8). They claim that they "will be disenfranchised" because of the limits on legislators' outside income. (*Id.*).

## IV.   STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's claims under pursuant to Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim, respectively. (Dkt. No. 23; Dkt. No. 23-4, at 18). "A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). As the Court does not reach the merits of Plaintiffs' claims, only the Rule 12(b)(1) standard is addressed here. *See Hadees v. Johnson*, No. 15-cv-1087, 2016 WL 5349789, at *1, 2016 U.S. Dist. LEXIS 130242, at *3 (N.D.N.Y. Sept. 23, 2016) ("As the standard[s] for Rule 12(b)(1) are dispositive, the Court will discuss only those.").

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon*, 752 F.3d at 243 (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

8

## V. SUBJECT MATTER JURISDICTION

### A. State Law Claims

Defendants argue that the Eleventh Amendment[7] bars this Court from adjudicating Plaintiffs' claims alleging Section 5–b violates New York State law. (Dkt. No. 23-4, at 23). Plaintiffs do not respond to this argument in either their opposition to the motion to dismiss, (*see* Dkt. No. 25), or in their memorandum in support of the PSAC, (*see* Dkt. No. 27-3). Plaintiffs have thus abandoned those claims. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008))). In any event, the Court agrees that the Eleventh Amendment bars these claims.

"As a general matter, the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity." *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). An exception to this rule exists whereby "a suit for prospective injunctive relief on a constitutional claim against a state official is not a suit against the state." *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). However, a federal district court cannot decide "a claim challenging a state official's conduct under state law," because to do so "would fly squarely in the face of the Eleventh Amendment and the limited nature of the exception for constitutional claims." *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("It is difficult to think of a greater intrusion on state sovereignty than

---

[7] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI.

9

when a federal court instructs state officials on how to conform their conduct to state law."). Additionally, the bar "is unaffected . . . by the posturing of plaintiffs' state law cause of action as pendent to plaintiffs' federal constitutional claim." *All. of Am. Insurers*, 854 F.2d at 604–05 (citing *Pennhurst*, 465 U.S. at 119–120).

Consequently, Defendants are correct that this Court is barred by the Eleventh Amendment from hearing Plaintiffs' claims arising under state law and those claims must be dismissed.

### B. Federal Law Claims

Defendants argue that both Legislator and Constituent Plaintiffs lack Article III standing. (Dkt. No. 23–4, at 26–28).[8] Plaintiffs contend that standing is present. (Dkt. No. 25, at 7–8).

#### 1. Standing Principles

"Whether a claimant has standing is the 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *U.S. v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (citation omitted). "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" an element of which "is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted); *see also Equal Vote Am. Corp. v. Congress*, 397 F. Supp. 3d 503, 507 (S.D.N.Y. 2019) ("'The irreducible constitutional minimum' necessary to establish subject matter jurisdiction is standing." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))), *aff'd in part, remanded in part sub nom. Liu v. U.S. Cong.*, 834 F. App'x 600 (2d Cir. 2020). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal

---

[8] Defendants also assert that Plaintiffs' federal law claims are barred under principles of legislative and Eleventh Amendment immunity and that the claims fail on the merits (or, with respect to certain claims, that they are not ripe). (Dkt. No. 23-4, at 19–22, 24–26, 28–45).

connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 504 U.S. at 560–61)).

Defendants specifically challenge whether Plaintiffs have shown an injury in fact. (Dkt. No. 23-4, at 27–28). "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S. at 158 (quotation marks omitted) (quoting *Lujan*, 504 U.S. at 560)). "'[A]llegations of possible future injury are not sufficient' to establish an injury in fact." *Brooklyn Branch of NAACP v. Kosinski*, 657 F. Supp. 3d 504, 516 (S.D.N.Y. 2023) (quoting *Clapper*, 568 U.S. at 409 (citations omitted)). Rather, "the plaintiff must face a 'substantial risk' of injury, or the threat of injury must be 'certainly impending.'" *Brooklyn Branch of NAACP*, 657 F. Supp. 3d at 516 (quoting *Susan B. Anthony List*, 573 U.S. at 158).

However, plaintiffs are not required to subject themselves to "an actual arrest, prosecution, or other enforcement action" in order to establish standing. *Susan B. Anthony List*, 573 U.S. at 158 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Instead, in a pre-enforcement challenge, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The fear of civil penalties can be sufficient. *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000).

### 2.     Application

While standing does not depend on the merits of Legislator Plaintiffs' claims, examining those claims is necessary to understand the specific potential injuries at issue here. *See Warth v.*

11

*Seldin*, 422 U.S. 490, 500 (1975) ("Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." (internal citation omitted)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." (citations omitted)). The Legislator Plaintiffs' remaining claims, in both the operative complaint and in the PSAC, allege violations of equal protection, due process, and the right to participate in the legislative process and vote on legislation. (*See* Dkt. No. 18, at 13–14, 15–16, 17–19; Dkt. No. 27-2, at 16–17, 18–19, 20–21, 22–23). These claims all contemplate harms that derive from the law being enforced against Plaintiffs, and specifically with respect to the last two claims, that their right to vote in the New York State Legislature will be taken away for at least some period. (*See* Dkt. No. 18, at 13–14, 15–16, 17–19; Dkt. No. 27-2, at 16–17, 18–19, 20–21, 22–23).

But as Defendants point out, whether Legislator Plaintiffs will even be in a position to violate the law is at the moment entirely speculative: these individuals "will not be subject to the outside earned income requirements or face potential penalties unless they are reelected in November 2024, which may not occur." (Dkt. No. 23-4, at 27).[9] Consequently, before an election takes place that confirms their position as a member of the New York State Legislature, it cannot be said that Legislator Plaintiffs are at a risk of the law being enforced against them.[10] *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) ("The identification of a

---

[9] In this way the Plaintiffs differ from the plaintiff in *Peeper v. Callaway Cnty. Ambulance Dist.*, 122 F.3d 619 (8th Cir. 1997), a case cited by Plaintiff, (*see* Dkt. No. 25, at 16, 17). There, the plaintiff commenced her suit *after* having already been elected as a member of the Callaway County Ambulance District Board of Directors. *See id.* at 620–22.

[10] The speculative nature of the claims is even more significant with respect to Plaintiff McCaffrey, who is not currently a member of the New York State Legislature, and alleges only that he would run for state office but for the outside income restrictions, (Dkt. No. 27-2, ¶ 9), as well as Plaintiff Slater, who makes no allegations regarding his income and thus has not alleged he would be subjected to any risk of enforcement even if re-elected to the New York State Legislature, (*id.*, ¶ 18).

credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue. A credible threat of prosecution, however, cannot rest on fears that are imaginary or speculative." (internal quotation marks omitted) (quoting *Babbitt*, 442 U.S. at 298)).

Moreover, Legislator Plaintiffs' pleadings indicate that they may not choose to remain or attempt to be elected officials, stating that while they "intend to run for office in 2024," "they will be forced to choose between resigning from the New York State Legislature (or never running for office at all) and terminating outside employment that yields income" in violation of the law. (Dkt. No. 27-2, ¶ 20). Such allegations, indicating that they may not put themselves in a position to violate the law, underline the speculative nature of the harm.[11]

Legislator Plaintiffs attempt to argue that the injury is not remote, stating that "New York State Legislators who will be in office in January 2025 must start circulating petitions as early as February 2024" and that "Plaintiffs' legislative salaries, businesses, outside income, professional licenses, and partnership . . . are in jeopardy much sooner" than when the law goes into effect. (Dkt. No. 25, at 8 (citing Dkt. No. 18, ¶ 43)). But such harms, which relate to the choices Legislator Plaintiffs might take to comply with the law, are not derived from the law's *enforcement*, and thus not the type of injury Legislator Plaintiffs' specific claims are meant to redress.

---

[11] Courts in this Circuit have found intent to violate the law lacking when a plaintiff "demonstrates compliance with— not an intention to violate—" the law at issue, *see Sibley v. Watches*, 501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) (finding the plaintiff had not alleged an intention to violate New York State's cane sword ban because "he voluntarily removed" his cane sword from the state), or when a plaintiff's allegations are insufficiently "concrete," *see Bellocchio v. Garland*, 614 F. Supp. 3d 11, 17 (S.D.N.Y. 2022) (finding allegations insufficient to show plaintiff intended to violate a law against selling an organ when he did "not claim, for example, to have a potential buyer to whom he might sell his organs" or "claim to have taken steps to prepare for such an exchange.")

Any harm to Constituent Plaintiffs' right to vote is likewise speculative. In order for Constituent Plaintiffs to be harmed in the way Plaintiffs articulate, this would require "that the legislator[s] [Constituent Plaintiffs] support will be reelected, will fail to abide by the outcome income restrictions and will lose the ability to vote as [] member[s] of the legislature." (Dkt. No. 23-4, at 28). This too is a "speculative chain of possibilities" based on the occurrence of multiple events, insufficient to establish a "certainly impending" future injury. *See Clapper*, 568 U.S. at 414.

Accordingly, Plaintiffs have failed to allege standing, in either the operative complaint or the PSAC. The Court thus grants Defendants' motion to dismiss for lack of subject matter jurisdiction and Plaintiffs' motion to amend is denied as futile.[12]

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, (Dkt. No. 23), is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' complaint, (Dkt. No. 18), is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff's motion to amend, (Dkt. No. 27), is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: June 21, 2024

Brenda K. Sannes
Chief U.S. District Judge

---

[12] Although not all defendants in this action have joined in the motion to dismiss, the Court has "an independent obligation to consider the presence of absence of subject matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) (citation omitted).Having found that all plaintiffs lack standing, dismissal of the entire action is warranted. *Cohen v. Experian Info. Sols., Inc.*, No. 20-cv-3678, 2021 WL 413494, at *3, 2021 U.S. Dist. LEXIS 22014, at *7–8 (E.D.N.Y. Feb. 5, 2021) ("[W]hen some but not all of the defendants move to dismiss and the court determines that the plaintiff lacks standing, the court may dismiss the claims against the non-moving parties *sua sponte* under Rule 12(h)(3) of the Federal Rules of Civil Procedure." (citation omitted)).